UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

**NOTICE OF MOTION
TO SUPPRESS EVIDENCE**

-against-

07 Crim. 609 (JR)

MENTOR DAIJA,

                Defendant.
-------------------------------------------------------------------X

To:    A.U.S.A. Benjamin Gruenstein
        United States Attorney's Office
        One Saint Andrew's Plaza
        New York, New York 10007

Counsel:

PLEASE TAKE NOTICE THAT at the hearing scheduled to be held on August 13, 2006, the defendant, Mentor Daija, will move this Court for an Order suppressing all verbal and written statements made by the defendant to the police following his arrest, and all physical evidence seized as a result of those statements.

PLEASE TAKE FURTHER NOTICE that counsel will rely upon the attached declaration, affidavit and memorandum of law in support of this motion.

                                                  Alexei Schacht, Esq.
                                                Nalven & Schacht
                                                 350 Fifth Avenue
                                                 Suite 1422
                                                 New York, New York 10118
                                                 (212) 616-5540

7th day of August, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                                                **DECLARATION**

              -against-

                                                                                 07 Crim. 609 (JR)

MENTOR DAIJA,

                       Defendant.
------------------------------------------------------------------X

Alexei Schacht, Esq., hereby declares under the penalties of perjury:

1. I am the attorney of record for the defendant, Mentor Daija, in the above-referenced case. I base this affirmation primarily upon a review of the contents of my office file for this case, and conversations with the defendant and the prosecutor.

2. I make this declaration in support of defendant's motion to suppress.

## FACTUAL BACKGROUND

3. On May 4, 2007, two men tried to rob and kill the defendant as he left his apartment at 215 Gunhill Road in the Bronx, New York. Apparently the motive for the robbery was that marijuana and money was kept in the defendant's apartment.[1] The defendant resisted once he heard one robber say to the other that they would kill the defendant; the defendant fought them and was able to disarm one of the robbers and he shot the robber with his own gun; he also shot the same robber with another gun that was

---

[1] The defendant sublet his room in the apartment from the tenant, a man in the marijuana business who kept a large amount of marijuana and money in the apartment.

inside of his apartment. But during the fight between the robbers and the defendant, the defendant was very badly hurt. One robber bit off a small piece of the defendant's arm and the defendant's nose was broken; he also sustained numerous other cuts and bruises during the fight.

4. After one robber fled and the other was shot, the defendant left the building and went down the block and entered a cemetery where he stumbled around covered in blood until police officers arrived. The police promptly arrested the defendant despite the fact that they had not observed him committing any crime; the defendant was covered in blood might have meant only that he was an injured crime victim. Indeed, he was an injured victim of a robbery and vicious assault.

5. In any event, as detailed in the defendant's affidavit, the defendant was questioned at length after his arrest but without the benefit of being told his **Miranda** rights. After receiving the **Miranda** warnings the defendant told the police that he shot the man in self-defense and also where the police could find one of the guns.

6. Additionally, the defendant was denied necessary medical care and made to feel that receiving medical care was premised upon his speaking with the police and agents. In fact, since he was denied medical care for over 24 hours and was not taken to a hospital until after he invoked his right to counsel, it is reasonable to assume that the police and agents denied the defendant medical care as a way to coerce him into speaking to them.

**RELIEF REQUESTED**

7. The defendant was arrested without probable cause since at the time of his arrest the police had no reason to think that he was anything other than a victim of a crime. Nonetheless, they arrested him before they knew that he had shot anyone or that drugs were in his apartment. This was illegal. Further impropriety occurred when the police failed to provide him with medical attention despite the fact that he so desperately needed it.

8. And this error was compounded when the police immediately began questioning the defendant without providing him with his **Miranda** rights. Obviously, then, the statements made after the defendant was illegally arrested and before he received his rights must be suppressed.

9. The police questioned the defendant on and off for several hours after his arrest at about 1:30 p.m. in the cemetery, but before receiving his rights at about 5:50 p.m. at the precinct, during which time he admitted to shooting a man; he also told the police where they could find one of the guns involved in the shooting, which they recovered. The gun, and any other physical evidence recovered as a result of the illegal questioning, must be suppressed since it was recovered as a result of an unlawful arrest and was the fruit of illegal questioning.

10. The police eventually did give the defendant his **Miranda** rights and questioned him further, reducing two separate statements to writing, one in the defendant's hand-writing and one in the lead detective's hand-writing. All of these statements must be suppressed since they were

        essentially the same as the earlier pre-**Miranda** ones and were made as part of a continuous course of interrogation.

11. Moreover, all statements, and any physical evidence recovered as a result of those statements, should be suppressed because the government intentionally withheld medical care from the defendant until he would speak with police and agents.

12. In sum, and for all of the foregoing reasons, we ask that the Court order suppression of all post-arrest statements made by the defendant to police and government agents and all evidence obtained as a result of those statements.

                                      S/ Alexei Schacht
                                      _____
                                      Alexei Schacht, Esq.
                                      Nalven & Schacht
                                      350 Fifth Avenue
                                      Suite 1422
                                      New York, New York 10118
                                      (212) 616-5540

7th day of August, 2007

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                        **AFFIDAVIT**

        -against-

                                                        07 Crim. 609 (JR)

MENTOR DAIJA,

               Defendant.
------------------------------------------------------------------------X

    Mentor Daija, hereby declares under the penalties of perjury:

1. I am the defendant in this case and I make this affidavit in support of my motion to suppress evidence. Because my lawyer wrote this affidavit for me for the sole purpose of this motion it does not include all facts known to me that are relevant to the case.

2. On May 4, 2007 at about 1:30 p.m. I left the apartment that I was then living in, located at 215 East Gunhill Road in the Bronx, New York. Just after I left my apartment I was attacked by two men who were robbing me, one of whom said to the other that they would kill me. Without giving all of the details of what happened next, it is enough for the purpose of this motion, according to my lawyer, to say that I fought them for my life. During the course of the fight one of the robbers bit a small piece of flesh from my arm and they also punched and kicked me in the body, head and face. I think that my nose was fractured in the fight. But I was able to sufficiently defend myself so that I was not killed and during the robbery I was able to shoot one of the robbers; I later learned that he died.

3. Shortly after the fight I left the building and went into a cemetery that is one long block away from my apartment building. I was covered in blood but unarmed. Because of the fight, I believe that neighbors called 911. Two uniformed police officers saw me in the cemetery and ordered me to the ground. I complied but they handcuffed and kicked me. I was placed under arrest and put inside of their police car. They, and then detectives who arrived shortly thereafter at the police car, started questioning me about what had happened back at my apartment building. I told them, among other things, that I had been defending myself against men who tried to kill me. I also told them that I was badly hurt and needed medical attention.

4. I was taken to the police precinct where I was questioned further. Then, at about 5:50 p.m., after admitting that I shot a man defending my own life, I was given for the first time what I now know are called the "Miranda warnings." Following these warnings, I continued to speak to the police over the next several hours and I made numerous additional statements both in writing and verbally. I also continued to ask them to take me to the hospital and was told not to worry that I would be taken care of. I was in a constant state of pain since the robbery and was especially worried about the bite on my arm and my nose.

5. I was kept all night in a cell in the precinct and the following day I was questioned by FBI agents who came to talk to me. At one point I asked for a lawyer and they stopped questioning me and only then, at about 3:00 or

4:00 p.m. on May 5, 2007, did I receive my first medical treatment.

_____
Mentor Daija

Sworn to before me this
6th day of August, 2007


Notary Public

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
UNITED STATES OF AMERICA

        -against-

        07 Crim. 609 (JR)

MENTOR DAIJA,

        Defendant.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW

**Introduction**

    This Memorandum of Law is submitted in support of the defendant's motion to suppress all statements made by him to the government (pre and post-**Miranda** warnings, on May 4 and May 5, 2007) and all evidence seized as a result of those statements, in particular a .9 mm handgun found in or near a bush outside of the defendant's apartment building.

**The Defendant was arrested without probable cause and was interrogated without first being advised of, and waiving, his rights under Miranda v. Arizona, 384 U.S. 436 (1966).**

    Shortly after two men tried to rob and kill the defendant he went into a cemetery down the block from his apartment. Once there, covered in blood, and looking, if anything, like the victim of a crime, he was arrested. There can be no doubt that after being forced to the ground, kicked and handcuffed and placed in a police car that a reasonable person in his situation would feel that he was in custody. **See Berkemer v. McCarty**, 468 U.S. 420, 422 (1984). Despite this fact the defendant was interrogated and

he made self-incriminating statements without the benefit of receiving **Miranda** warnings.

The police lacked probable cause because at the time of the arrest the defendant was simply a blood-covered person in the vicinity of a crime scene, making him more likely the victim rather than a perpetrator; indeed, he was the victim of a crime. **See generally United States v. Watson**, 423 U.S. 411 (1976)(probable cause standards). In any event, the police certainly had no basis to believe that he had committed a particular crime. Therefore, the statements made following an illegal arrest must be suppressed. **See generally United States v. Crews**, 445 U.S. 463,470 (1980).

Then, without advising him of his rights, the police questioned the defendant on and off for several hours, during which time he admitted to shooting a man in self-defense and told the police where they could find one of the guns involved in the shooting. All these custodial statements (and physical evidence seized as a result of them[2]) made without the benefit of **Miranda** warnings must be suppressed.

**The Defendant's post-Miranda statements must also be suppressed**.

The police did eventually give the defendant his **Miranda** rights and questioned him further. All the while, since the time of his arrest, the defendant was bleeding and in pain, and asking for medical attention. But instead of being taken to a hospital, the defendant was questioned by detectives for several hours, during which time he signed

---

[2] Evidence seized directly or indirectly as a result of an unlawful search or seizure, **Wong Sun v. United States**, 371 U.S. 471, 484-85 (1963),or through a violation of the Sixth Amendment right to counsel must be suppressed. **United States v. Spencer**, 955 F.2d 814,819-20 (2d Cir.1992).

two separate statements. He was then held overnight in a cell to await the FBI's arrival the next day.

The bad faith of the police is apparent in the fact that they did not take him to Central Booking to be arraigned in New York City Criminal Court, since he was originally arrested on New York State charges. Rather, at some point the decision was made to "make it a federal case" and to hold him for the FBI. Meanwhile the defendant was kept in a precinct cell instead of being taken to get medical care.

The FBI agents came the next day and questioned him further and the defendant made many statements to the agents, very similar to the ones he made to the police the day before. Eventually the defendant asked for a lawyer and the questioning stopped; the defendant was then taken to the hospital at about 3:00 p.m., more than 24 hours after his arrest.

In light of these facts, the Court should suppress all post-**Miranda** statements since they were all made: 1) following his unjustified arrest without probable cause; 2) as a result of earlier illegally obtained pre-**Miranda** statements and 3) since he was denied urgently needed medical care until he finished speaking to the police.

Initially, as discussed above, we think there can be no doubt that Daija's "first", pre-**Miranda**, statements must be suppressed since they were obtained following an unlawful arrest and as a violation of **Miranda** itself. But all of the post-**Miranda** statements must be suppressed as well since they flowed from the earlier illegal statements.

The Supreme Court has decided that in order for these types of post-**Miranda** statements, made following earlier illegal questioning, to be admissible, courts should

look to five 5 factors. They are:

1) the completeness and detail of the questions and answers in the first round of pre-**Miranda** questioning;

2) the overlapping content of the statements;

3) the timing and setting of the statements;

4) the continuity of the police personnel involved; and

5) the degree to which the interrogator's questions treated the second round as a continuation of the first round.

**See Missouri v. Seibert**, 542 U.S. 600, 609-611 (2004).

Judged by these factors, the second alleged post-*Miranda* statements in this case must be suppressed.

First, the statements are more or less identical. The defendant repeatedly told the police and agents that he shot a man in self-defense. While some of the details in the statements varied, the gist was totally consistent and overlapping.

Second, the pre-**Miranda** interrogation began in a police car, continued to the precinct and was immediately followed by post-**Miranda** questioning.

Third, with the exception of the FBI agents who came the next day, the same police detectives conducted the interrogation before and after the **Miranda** warnings were given. The FBI agents' questioning was also duplicative of the detectives' questioning the day before.

For these reasons, the post-**Miranda** statements should also be suppressed.

In addition, the post-**Miranda** statements should be suppressed because the police and agents withheld necessary medical care from the defendant until after

questioning him over more than a 24-hour period and until he invoked his right to counsel.

While the police did not themselves assault and injure the defendant, they found him assaulted and seriously injured. He asked them for medical care and told them he was in pain. Instead of taking him to a doctor or hospital immediately they questioned him over a 24-hour period, until he asked for a lawyer.

As such, all statements should be suppressed because of the government's conduct. **See Mincey v. Arizona**, 437 U.S. 385,401-02 (1978).

Therefore, for all of the foregoing reasons, the Court should suppress all statements made by the defendant and all physical evidence recovered as a result of those statements.

                              S/ Alexei Schacht
                              _____
                              Alexei Schacht
                              Nalven & Schacht
                              350 Fifth Avenue
                              Suite 1422
                              New York, New York 10118
                              (212) 616-5540

7th day of August, 2007

```
-------------------------------------------------------------------X
UNITED STATES OF AMERICA
                                                    CERTIFICATE OF SERVICE
            -against-

                                                    07 Crim. 609 (JR)

MENTOR DAIJA,

              Defendant.
-------------------------------------------------------------------X
```

My name is Alexei Schacht; I am over 18 years of age and am not a party to this action.

On this 6th day of June, 2007, I personally served on the below-listed attorney the attached motion by ECF and regular United States mail:

A.U.S.A. Benjamin Gruenstein
United States Attorney's Office
One Saint Andrew's Plaza
New York, New York 10007

S/ Alexei Schacht

_____
Alexei Schacht

August 7, 2007