`

February 12, 2008

**BY DHL AND ECF**
The Honorable Jed S. Rakoff
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

   Re: *United States v. Mentor Daija, 07 Cr. 609 (JSR)*

Dear Judge Rakoff:

  I am attorney of record for Mentor Daija ("Daija" or "the defendant") and I write on his behalf to ask that the Court sentence him to a non-guideline sentence of no more than ten years in prison because of the many unusual circumstances presented by this case. The letter also 1) outlines our three objections to the Presentence Report and 2) asks the Court to reconsider its prior ruling determining that the murder guideline cross-reference applies to Counts one, two and five of the indictment. This letter presumes that the reader is already fully familiar with the cases's factual and legal background.

  1. Three Objections to the Presentence Report

  First, we object to the Presentence Report's ("Report") adoption of the Court's decision ("Court's decision") following the Fatico hearing. The reasons we disagree with the Court's conclusions are already submitted in our post-Fatico hearing submission, and additional reasons are discussed below in the second and third sections of this letter.

  Second, we object to the Report's recommendation that Daija not receive a three-level guideline reduction for accepting responsibility for his crime (see ¶¶ 8 and 24 of the Report). The defendant did and does accept responsibility for the crimes to which he pled guilty. The Court's decision, and the Report's recommendation, are primarily based upon the idea that Daija did not accept responsibility for committing a murder, a charge that was dismissed by the government, and not one to which he pled guilty. Daija did not deny shooting and killing Timur Alkhazov nor possessing a handgun in the course of being a member of a marijuana distribution conspiracy. As such, he has accepted responsibility for his crime. Indeed, for a defendant testifying on two occasions in federal court Daija has been unusually honest. Indeed, after the suppression hearing the Court even commented upon Daija's candid testimony.

Our last objection is of a factual nature; namely, that the Report does not include enough details in its Personal and Family Data and Employment sections of the about Daija's life circumstances. As discussed more below, in our application for a non-guideline sentence, the Court should have been made aware by the Report that Daija had actually just began studying law in university in Kosova when war broke out in 1999. Over approximately the next three years, until 2002, Daija fought against Serbia in that Balkan war. This experience, witnessing horrible genocidal acts against his fellow Kosovars, had a profound and searing impact upon Daija, forever altering his life.

So too the Report glosses over the drastic and terrible life changing effect that the war, and Daija's participation in it, had upon his family. Like most Kosovars the war caused Daija's family to suffer terrible financial and professional loss, losses that his family has still not overcome. Daija comes from an educated and cultured family; his parents and he, led relatively comfortable lives before the war. But after it Daija's parents' health and economic and professional standing all suffered. Daija himself had a "good", i.e., lucrative, job after the war removing land-mines. But this lucrative job was lost as foreign aid dried up and foreign governments left Kosova. And it was this destruction of the family's previously comfortable lifestyle that caused Daija to leave Kosova to seek better employment.

2. Motion for the Court to Reconsider its Decision that the Murder Cross-reference applies

We ask the Court to reconsider its decision that the murder guideline cross-reference applies in this case. The facts here simply do not justify, in my opinion, a finding that Daija committed murder. The case law supports this belief.

The Court's decision cites Virgin Islands v. Lake, 362 F.2d 770 (3d Cir.1966), for the proposition that the defendant had "malice aforethought" prior to shooting Alkhazov on the stairwell. But that case supports my belief that Daija is guilty of, at worst, manslaughter.

Under 18 U.S.C. § 1112, manslaughter is the unlawful killing of a human being without malice. Manslaughter is of two kinds, voluntary - upon a sudden quarrel or heat of passion, and involuntary. If anything, this crime was voluntary manslaughter, the guideline level for which is 29 under §2A1.3.

Lake involved the totally unprovoked stabbing by the defendant of his wife after he discovered she was divorcing him. According to Lake, malice aforethought includes "all those states of mind in which a homicide is committed without legal justification, extenuation or excuse" Id. at 774. In Lake the defendant had not even quarreled with the victim before he stabbed her 43 times. Under those circumstances the Court reasonably concluded that he intended to kill her with malice and he was guilty of first-degree murder. Here, while the Court does not believe the second shooting was justified, certainly your Honor must believe that Daija had "extenuation or excuse."

In Lake, the court found that the "absence of any quarrel provoking the defendant to action in hot blood" shows that Lake murdered his wife. Id. at 776. Here, by stark contrast, Daija was more than provoked, the "victim" tried to rob and kill him. This is the definition of a "hot blood" response.

As Daija testified, in response to the question, " And you felt that he posed a danger to you? A. Yes, that's the way I thought, because about a minute before I had his gun on my forehead, on my head" (Fatico hearing: 89). His actions were, if not self-defense, a direct result of violent provocation by Alkhazov; this is manslaughter.

Of course, we believe that Daija did not murder Alkhazov and that he acted in self-defense. As the Court found, "Daija possessed the gun in furtherance of the drug conspiracy because he was using it to protect himself while he concealed the proceeds of the conspiracy" (Court's Decision at page 8). I practically agree with this statement, Daija did possess the gun to "protect himself", and when he shot Alkhazov on the stairs he was protecting himself.

In any event, this brings me to our final reason for asking the Court to reconsider its decision; namely, that his actions were justified under New York law. The government has argued that the "Burglary was complete" (see footnote of page 7 of government's letter of December 28, 2007) and that, therefore, deadly physical force could not be used. But a burglary is never complete while the burglar is still in the victim's building. That a building may not be a dwelling under New York State law is irrelevant because a person who "reasonably believes that another person is committing or attempting to commit a burglary ...  may use deadly physical force upon such other person when he or she reasonably believes such to be necessary to prevent or terminate the commission or attempted commission of such burglary." Penal Law § 35.20 (3). By shooting Alkhazov Daija certainly terminated the commission of the burglary that was ongoing since a person fleeing from a burglarized building is certainly still committing the burglary.

  3.  Application for a Non-Guideline Sentence

It is elemental that 18 U.S.C. 3553(a) directs courts to examine, among other things, the "nature and circumstances of the offense and the history and characteristics of the defendant." Using that directive as a jumping off point, due to the "victim's" own wrongful behavior, the minimal harm caused by the offense, the defendant's minor role in the drug conspiracy and Daija's own background and personal history, we urge the Court to sentence the defendant to no more than ten years in prison for this crime.

Under the guidelines, if the victim's wrongful conduct contributed significantly to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. See U.S.S.G. § 5K2.10. Thus, victim misconduct is a legitimate ground for downward departure. See Koon v. United States, 518 U.S. 81, 95, 101, 105 (1996). Accordingly, if the particular guideline does not already take victim misconduct into account, then a downward departure is authorized. See id. at 96.

The Policy Statement of U.S.S.G. § 5K2.10 states that "[I]f the victim's wrongful conduct significantly contributed to provoking the offense behavior, the court may reduce the sentence below the guideline range to reflect the nature and circumstances of the offense. In deciding whether a sentence reduction is warranted, and the extent of such reduction, the court should consider the following: (1) The size and strength of the victim, or other relevant physical characteristics, in comparison with those of the defendant; (ii) The persistence of the victim's conduct and any efforts by the defendant to prevent the confrontation; (3) The danger reasonably perceived by the defendant, including the victim's reputation for violence; (4) The danger actually presented to the defendant by the victim; (5) Any other relevant conduct by the victim that substantially contributed to the danger presented; [and] (6) The proportionality and reasonableness of the defendant's response to the victim's provocation. Id.

Logically, § 5K2.10 authorizes a departure even when the force the defendant uses in response to the provocation is excessive and unlawful. See Koon v. United States, 518 U.S. at 105; United States v. Cheape, 889 F.2d 477, 480 (3rd Cir. 1989) (noting that duress and coercion were grounds for departure under U.S.S.G. § 5K2.12, even though the duress and coercion defenses were unsuccessful at trial). If the response were lawful, the defendant would not be guilty, and the Guidelines would not come into play at all. In the case of Koon v. United States, 518 U.S. 81 (1996), the defendant police officers assaulted the arrestee after the officers no longer perceived him to be a threat. See 518 U.S. at 86-87.

The Tenth Circuit, in United States v. Tsosie, 14 F.3d 1438 (10th Cir. 1994), overruled in part by United States v. Benally, 215 F.3d 1068, 1074 (10th Cir. 2000), found that the victim's misconduct significantly contributed to provoking the defendant's stabbing and killing the victim. United States v. Tsosie, 14 F.3d at 1442. In that case, the defendant chased down his wife, who had left him the night before, and discovered her with another man with whom she had previously had an affair. See id. at 1439-40. He grabbed a knife with a six-inch blade and ran after the man. The man stopped and swung his belt at the defendant, hitting the defendant in the nose. The defendant swung his knife at the man several times and one of the blows struck the man behind the knee. The men exchanged punches while on the ground and the stabbing behind the knee eventually caused the victim's death. See id. at 1440.

Turning to the facts in this case, Timur Alkhazov, and his unapprehended accomplice, are totally 100% responsible for initiating the confrontation that led to his own death. Unlike in Koon or Tsosie, cited above, Alkhazov and his accomplice committed an extremely serious armed robbery and attempted murder of Daija just moments before Daija killed Alkhazov. As discussed above in the second section of this letter, it is difficult to imagine a greater provocation of someone than forcing your way into their home and trying to rob and kill them there. This basic fact is unassailable even if one believes that Daija's second shooting was an illegal overreaction to what had been done to him a minute or two earlier. Indeed, I have found no case, since I believe none exists, with facts remotely similar to this one where a defendant kills someone who had tried to rob and kill them moments earlier. Based upon this highly extraordinary circumstance alone Daija should receive a much reduced sentence than that which the government and Probation Department argue the

guidelines prescribe.

A related point is raised by U.S.S.G. §1B1.3 (a)(3), which states, among other things, that "all harm that resulted from" relevant conduct in the case is to be considered in determining the appropriate punishment. Here, had Daija not shot Alkhazov and not been killed by the robbers he would have been subject to a five-year sentence for gun possession consecutive to about a one to three year sentence for marijuana conspiracy. What makes the sentencing consequences potentially so much worse for Daija, obviously, is the fact that he shot and killed a man. So the question arises what was the actual harm caused by what the Court determined to be the second unjustified shooting (as opposed to the first justified shooting in the apartment). The answer, we ask your Honor, to find is that there was no harm caused by the second shooting.

This is because, according to the government's expert witness, the first (justified) head shot to Alkhazov, going through his eye, was fatal in that it would have killed him had he not been shot again. So while the second shooting on the stairwell might also have had a "fatal" head shot it did not cause any harm since he would have died anyway. This analysis does not mean Daija need be considered blameless by the Court, but it should be a factor to be considered in the Court's sentencing calculus.

Another factor we ask the Court to use in determining a fair and reasonable sentence is to consider that Daija was a minor participant in the marijuana conspiracy compared to Altin Simoni. A "minor participant in any criminal activity" should receive a two-level downward adjustment under U.S.S.G. § 3B1.2(b). Minor role applies to a person "who is less culpable than most other participants, but whose role could not be described as minimal." 3B1.2, comment. (n.5). The Court must measure the defendant's culpability against his co-defendants and against the average defendant in the offense of conviction. **See United States v. Ajmal**, 67 F.3d 12,18 (2d Cir. 1995). Adjustments based only upon a comparison with do-defendants will be reversed. **See United States v. Carpenter**, 252 F.3d 2,3 (2d Cir.1994).

Here, while Daija has no co-defendants, he certainly had co-conspirators and all of them had more significant roles in the conspiracy than he did. For instance, Altin Simoni was apparently the owner of the drugs and money and gun in the apartment and Daija was merely working for him. SO too the potential purchaser of the drugs, "Mike", who Daija believes set up the robbery was above Daija in the drug-world hierarchy. And certainly no one was below Daija in this conspiracy. As such, he should receive a two level downward adjustment for his minor role in the offense.

Looking at Daija himself, without seeking to justify his inexcusable criminal conduct, his background offers insight into how he cam to be before the Court. I urge the Court to use that insight that partially mitigate the punishment to be imposed upon Daija.

Daija had actually just began studying law in university in Kosova when war broke out in 1999. Over approximately the next three years, until 2002, Daija fought against Serbia in that Balkan war. This experience, witnessing horrible genocidal acts against his fellow Kosovars, had a profound and

searing impact upon Daija, forever altering his life.

As mentioned above, the war in Kosova caused Daija's family to suffer terrible financial and professional losses. Maybe worst of all, Daija has been, I think, traumatized by seeing his homeland and fellow Kosovars basically attacked and brutalized by Serbs. He witnessed many atrocities and these events have had a strong negative impact upon him.

Daija's family is still financially depressed as the territory, while no longer at war, has been economically destroyed. Daija only left Kosova for economic reasons and, since he speaks enough English, which he learned in school, he was able to work abroad. Nonetheless, his family is not doing well and his mother in particular, who is ill and nervous about her son's predicament, has been doing very poorly.

Last, we ask the Court to consider the attached documents, which include an Albanian language letter (and English language translation) from Daija's family, an Albanian language (and English language translation) letter from Daija's mother's doctor concerning her medical condition, a certificate showing that Daija worked for the landmine removal company and a letter that Daija tells me certifies that he worked as a bank security officer and money courier.

Mr. Daija and I thank you for your close attention to this case.

Respectfully yours,

S:// Alexei Schacht


Alexei Schacht

Enclosures

cc:   A.U.S.A. Katherine Goldstein
      Mentor Daija